**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| DAVID L. GIBSON, <u>et al.</u>, | ) | |
| | ) | |
| v. | ) | Civil Action No.  06cv1696-(RMU) |
| | ) | |
| UNITED STATES NAVY, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**ERRATA FOR PLAINTIFFS' EXHIBIT 1**
**IN SUPPORT OF THEIR MOTION FOR AN ORDER TRANSFERRING**
**THIS CASE TO THE NORTHERN DISTRICT OF FLORIDA**
**UNDER 28 U.S.C. § 1404(a)**

On Mach 15, 2007, Plaintiffs filed their Motion for an Order Transferring This Case to

the Northern District of Florida, Docket Number 6.  Exhibit 1 as filed contains only page 1 of 8

pages due to a malfunction in converting to a PDF format.  The complete Exhibit 1 is attached,

and should replace the incomplete Exhibit 1.

.

Dated: March 16, 2007

Respectfully submitted,

  /S/ Arthur A. Schulcz, Sr.

ARTHUR A. SCHULCZ, SR.
D.C. Bar No. 453402
2521 Drexel Street
Vienna, VA 22180
Attorney for Plaintiffs
703-645-4010
FAX: 703-645-401

Of Counsel:
Douglas McKusick, Esq.
THE RUTHERFORD INSTITUTE
P.O. Box 7482
Charlottesville, VA 22906-7482

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID L. GIBSON, et al.,             ) | |
|                                       ) | |
| v.                                    ) | Case  No. 06cv1696 (RMU) |
| THE UNITED STATES NAVY, et al.        ) | |
|                                       ) | |

**DECLARATION OF ARTHUR A. SCHULCZ, SR.**

Pursuant to 28 U.S.C. § 1746, I, Arthur A. Schulcz, Sr, declare as follows:

1.      My name is Arthur A. Schulcz, Sr.  I have personal knowledge of and am competent to testify to the matters addressed herein.

2.      I am counsel of record for the plaintiffs in *Gibson v. U.S. Navy.*  I am also counsel of record for two chaplain cases in the District of Columbia, *Chaplaincy of Full Gospel Churches v. Winters* (*CFGC*) (originally v. Danzig, then England) and *Adair v. Winters* (originally Danzig, then England)*.*  These cases have been consolidated for pretrial purposes, including discovery.

3.      *Adair* originally sought class action status.  Numerous chaplains contacted me about joining the litigation after it was filed.  At that time, there were few decisions in *Adair* and *CFGC*.

4.      In June 2002 I moved to add 25 new plaintiffs to *Adair*, a procedure the District Court approved in a 2/7/02 status conference,  *see* Doc. entry following Doc. No. 42 addressing 2/7/02 Status Conference rulings.  This Motion to Add followed completion of briefing on summary judgment and class certification issues, according to the schedule approved by the Court.

5.      The *Adair* Motion to Add briefing discussed the necessity of an adequate pool of plaintiffs to represent and financially support a class action.

6.      The District Court denied the *Adair* Motion to Add without prejudice or explanation on 7/16/03.  *Adair* Doc. No. 85

7.      In 2003 the District Court granted Plaintiffs' Motion to Compel the Secretary of Navy to release board personnel from their oath of secrecy so plaintiffs could establish evidence that denominational bias had occurred on the boards, some selections for promotion were based on denomination rather than the record, and the faith group identifier which had been provided to board members was used as a consideration in determining selections.  *Chaplaincy of Full gospel Churches v. Johnson,* 217 F.R. D. 250, 260-61 (D.D.C. 2003).  The District Court found evidence of board proceedings was relevant and material because only board members could testify to what happened during board proceedings.  *Id*. at 256.

8.      Defendants appealed this decision and the U.S. Court of Appeals for the District of Columbia reversed it in  *In re England*, 375 F.3d 1969 (D.D.C. 2004), *cert denied,* 543 U.S. 152 (2005).  *In re England* held  § 618(f) was an absolute bar to disclosure of board proceedings. The Court of Appeals ignored plaintiffs' evidence indicating there was bias on specific boards, as well as DOD IG and NIG investigations which established some promotion selections had been based on or influenced by denomination.

9.      No other court of appeals has ruled the government may hide unconstitutional misconduct from civil discovery.  In the Eleventh Circuit, *In re Nelson*, 873 F.2d 1396, 1397 (11th Cir. 1989), holds the opposite, a statute must have specific language indicating Congress specifically intended to bar civil discovery.  The Ninth Circuit also rejected the logic of *In re England* in *Zambrano v. INS*, 972 F.2d, 1122, 1125 (9th Cir. 1992).  *Wilkins v. United States,* in the Southern

District of California, rejected the Navy's efforts to bar discovery of both promotion boards and selective early retirement (SER) boards.  *See United States v. U.S. District Court for the So. Dist. of Cal.*, 384 F.3d 202 (9th Cir. 2004).

10.    The practical effect of *In re England* is to bar the *Adair* plaintiffs' First and Fifth Amendment claims of discrimination in board proceedings and their Religious Freedom Restoration Act claims, because without discovery of promotion board proceedings there can be no evidence that denomination, in fact, played a part.

11.    Other chaplains, in addition to the 25 chaplains who requested to be added to *Adair* and were denied, contacted me about becoming involved in chaplain litigation, specifically attacking the injustices of the promotion system and the ability of senior chaplains to ruin careers without accountability.

12.    The Associated Gospel Churches (AGC) discussed with me the possibility of joining the chaplain litigation or filing a new case on behalf of its chaplains sometime around 2004 because the Navy's discriminatory policies had ruined careers of several outstanding AGC chaplains, an AGC chaplain was an *Adair* plaintiff, other AGC chaplains were interested in joining the litigation and three had tried to join in June 2002.

13.    I am authorized by the AGC for the limited purpose of providing this Declaration to say that my initial advice to AGC was that it would be foolish to file suit in the District of Columbia and it would be foolish and unethical for me to file it there.

      A.    I based this initial counsel on the fact that the *CFGC /Adair* District Court's refusal to certify for interlocutory appeal the question whether chaplains serving as

promotion board members served as naval officers or denominational representatives made proving several of the major claims difficult;

B.    I advised AGC to wait and see what happened in *Adair* and in another case in the Southern District of California, *Wikins v. United States,* since *Wikins* might offer alternative means to get to the boards, if *Adair* remained an obstacle;

C.    after *In re England*, it would be very difficult to prevail on issues concerning misconduct or denominational bias in selection board proceedings;

D.    I advised there were other chaplains who had expressed interest in joining litigation with the Navy over religious discrimination and, depending on what happened on the class certification issue (still pending), it would make sense to join with them for a variety of reasons.

14.    I am also authorized by the AGC to say that I informed AGC that while the above issues and problems in *Adair* may eventually be resolved on appeal, that process takes years, there are no guarantees of success, and the expenses would be large and unnecessary, given the availability of other venues in which those same issues can be raised, where strict scrutiny and discovery of board proceedings apply and bring a quicker resolution.  I informed the other potential chaplain plaintiffs of these considerations as well.

15.    In late February 2006, the *Adair* District Court denied those plaintiffs' motion for a temporary restraining order and injunction to preclude plaintiff Michael Belt's separation for failure of selection, the last *Adair* plaintiff on active duty.  The District Court also make clear it would not apply strict scrutiny to defendants' 26 year practice of reserving at least one promotion

board seat for Catholic chaplains. *Adair v. England*, 417 F.Supp.2d 1, 6 (D.D.C. 2006).

16.     The *Adair* District Court had failed to certify a class for more than 3 years after approving

the motion to certify, because there was no definition and no appointment of class counsel.

Chaplains continued to ask about becoming involved.  With CH Belt's discharge, it became

apparent I needed to protect and pursue their interests in an alternative forum, particularly given

the *Adair* law of the case and *Adair*'s many legal uncertainties*,* including the scope of discovery

and whether the existing plaintiffs could represent a class of active duty plaintiffs.  The latter

raised a host of legal and liability issues.

17.     I contacted each of the original 25 chaplains who had requested to join the *Adair*

litigation in 2002 as well as other Non-liturgical chaplains who expressed interest in becoming

plaintiffs, advised them of recent developments in *Adair*.  Twenty three of the 25 chaplains said

they still wanted to become plaintiffs in a new case.  Eighteen other Non-liturgical chaplains also

asked to become plaintiffs if a new suit was filed.  The AGC renewed its commitment to become

a plaintiff on behalf of its chaplains, at least two of whom would be named plaintiffs in the new

case.

 18.     Every potential and actual plaintiff in *Gibson v. U.S. Navy* was informed of the great

difficulty and long struggle in successfully pursuing their claims in the District of Columbia

under the existing law of the case and Circuit law, including the impact of *In re England.*.  They

were informed that other circuits do not present the same problems, particularly with strict

scrutiny.

19.     Some clients specifically directed me not to bring this litigation in the District of

06cv1696
EXHIBIT 1

Columbia because they want to expose Chaplain Corps corruption and can not do it there.

20    These *Gibson* plaintiffs want to challenge the constitutionality of defendants' selection board procedures, specifically including the provision of chaplains on a board with a small number of members who vote in secret, and a 26 year practice reserving at least one promotion board membership solely for Roman Catholic chaplains, challenges the *Adair* Court rejected.

21.    Many of these plaintiffs understand strict scrutiny is supposed to apply to denominational preferences and they did not and do not want to bring and would not bring suit in a jurisdiction which does not apply Supreme Court precedent holding strict scrutiny applies to denominational preferences.

22.    Under the Rules of Professional Conduct of the District of Columbia, I have an obligation as both an advisor and a litigator to advise my clients about the validity of their claims under local law, the difficulty in bringing those claims under local precedent if such exists, and the availability of other options to vindicate their claims.  I do so.

23.    My obligation as an attorney is to find a venue where their constitutional right to petition for redress for the violation of their constitutional and statutory rights may be exercised if there is a valid claim supported by existing law and fact.

24.    I examined the possibility of bringing a new action in other Circuits, looking specifically at whether the Circuit would accept or reject *In re England's* rationale and other litigation considerations.  I discussed some of these options with some clients and decided the Eleventh Circuit would be the best venue, based on available information.

25.    I would violate the Rules of Professional Conduct of the District of Columbia as well as

Rule 11 were I to bring the claims of *Gibson* in the District of Columbia, knowing that:

> (a) the case would be assigned to the *Adair* judge under the District's "related case" rule (as it has);
>
> (b) that judge has denied strict scrutiny to denominational preferences and promotion board composition issues;
>
> (c) *In re England* effectively bars discovery necessary to prove these plaintiffs' First and Fifth Amendment claims, discovery which is available in other circuits; and
>
> (d) Religious Freedom Restoration Act and other claims face an uphill battle because of decisions in the District of Columbia which differ from decisions in other circuits.

26.    It is my understanding that these same obligations apply in almost every other jurisdiction, including the Northern District of Florida.

27.    As attorney for a prospective class, I have an obligation to represent and advance the interests of the class.  Bringing an action in the District of Columbia would not be in the class's interest given the state of the District's law and the great difficultly and/or impossibility of vindicating claims valid in other circuits.

28.    Several of these plaintiffs have served on chaplain promotion boards as recorders or have knowledge of improprieties, misconduct, manipulation and/or denominational prejudice on chaplain promotion boards and wish to testify as to what they saw and heard.  It is important to them to bring this litigation in a venue where they may expose the defendants wrongdoing, cover up, and failure to abide by the Constitution.

29.    No plaintiff directed this attorney to file their claim in the District of Columbia and

several specifically directed that it not be filed here because of the difficulty in proving their claims.

30.     I know of no plaintiff who would direct this attorney to file his or her claim in the District of Columbia when he/she had other venues available; I would not bring a case where I know the major claims will be dismissed or are impossible to prove because discovery has been barred and where major issues wait to be decided on appeal.

31.     No *Gibson* plaintiff resides in the District of Columbia but several reside within the Ninth and Eleventh Circuits where their claims are viable based on existing Circuit law.

    This testimony is true to the best of my knowledge and ability, it is made under penalty of perjury and reflects the testimony I would give if called to testify in a court of law.


March 14, 2007                         /S/ Arthur A. Schulcz, Sr.
                                      Arthur A. Schulcz, Sr.
                                      Counsel for the Gibson Plaintiffs