## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID L. GIBSON, et al.,      ) | |
|      ) | |
|     v.      ) | Case  No. 06cv1696 (RMU) |
| THE UNITED STATES NAVY, et al.      ) | |
|      ) | |

## PLAINTIFFS' MEMORANDUM IN REPLY
## TO DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR AN ORDER TRANSFERRING
## THIS CASE TO THE NORTHERN DISTRICT OF FLORIDA
## UNDER 28 U.S.C. § 1404(a)

.

April 5, 2007

                     /S/ Arthur A. Schulcz ,Sr.
                     ARTHUR A. SCHULCZ, SR.
                     D.C. Bar No. 453402
                     2521 Drexel Street
                     Vienna, VA 22180
                     703-645-4010
                     FAX: 703-645-401

Of Counsel:
Douglas McKusick, Esq.
THE RUTHERFORD INSTITUTE
P.O. Box 7482
Charlottesville, VA 22906-7482

# **INDEX**

INDEX................................................................. i

TABLE OF AUTHORITIES................................................ ii

INTRODUCTION AND SUMMARY OF REPLY................................... 1

ARGUMENT............................................................ 3

I.      THE LAW OF THE CASE CANNOT APPLY WHEN A § 1404(a) TRANSFER FAILS
        TO MEET STATUTORY CRITERIA.................................. 3

II.     *GIBSON* AND *ADAIR* ARE NOT THE SAME PARTIES ............... 5

III.    NOT BEING ABLE TO LITIGATE CLAIMS WHICH ARE VIABLE AND OTHER
        DISTRICTS IS MANIFEST INJUSTICE............................ 10

        A.      Defendants' Argument Ignores the Reality That Any Attorney Bringing this Case
                must Comply with Rule 11 and an Attorney Must Act in Accord with the District
                of Columbia's Rules of Professional Conduct......................... 11

                1.      Defendants ignore the fact "to bring a case" means filing a complaint... 12

                2.      Defendants ignore the fact an attorney must comply with Rule 11 and
                        local bar requirements to file a complaint........................ 13

                3.      Applying Rule 11 and Codes of Professional Conduct in determining
                        whether a case could be brought in the transferee district would not lead
                        to absurd results........................................... 15

        B.      Due Process Requires that the Principles Evaluating § 1404(a)'s Criteria Be the
                Same for Litigants in Both Federal Question and Diversity Cases............ 18

IV.     DEFENDANTS FAIL TO ADDRESS THE CONSTITUTIONAL ISSUES ARISING
        FROM THE TRANSFER WHICH BARS PLAINTIFFS' CONSTITUTIONAL
        CLAIMS.................................................... 21

CONCLUSION......................................................... 23

<u>**TABLE OF AUTHORITIES**</u>

**FEDERAL CASES**

*Adair v. England*, 183 F.Supp.2d 31 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Adair v. England*, 217 F.Supp.2d 7, 14 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Adair v. England*, 417 F.Supp.2d 1 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In Re Korean Airline Disaster*, 829 F.2d 1171 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . 20

*Allstate Insurance v. Clohessy*, 9 F.Supp.2d 1314 (N.D.Fla. 1998). . . . . . . . . . . . . . . . . . . . . . 6

*Bounds v. Smith*, 430 U.S. 817 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988 ). . . . . . . . . . . . . . . . . . 3-5

*County of Allegheny v. ACLU*, 492 U.S. 573 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ferens v. John Deere Co.*, 496 U.S. 516 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Harris v. Garner*, 216 F.3d 970, (11th Cir. 2000), *cert denied*, 532 U.S. 1065 (2001). . . . . . . . . 12

*Hernandez v. C.I.R.*, 490 U.S. 680 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hoffman v. Blaski*, 363 U.S. 335 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*In re England*, 375 F.3d 1169 (D.C. Cir 2004), *cert denied*, 543 U.S. 1152 (2205). . . . . . . . . . . 9

*In re Scott*, 709 F.2d 717 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . 10

*Merrill Lynch v. Haydu*, 675 F.2d 1169 (11th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Oliney v. Gardner*, 771 F.2d 856 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pigford v. Johanns, 416 F.3d 12 (D.C. Cir. 2005), cert denied, 126 S.Ct. 1581 (2006). . . . . . . . . 4

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994 (E.D.Tex. 1993). . . . . 10

*TPM Holdings v. Intra-Gold Industries*, 91 F.3d 1 (1st Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 14, 15, 18, 19

*Warrick v. General Electric Co.; RCA Corp.*; *RCA Corp.*, 70 F.3d 736 (2d Cir. 1995). . . . . . 7, 23

## STATE CASES

*In re Lenoir*, 585 A.2d 771 (D.C. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL STATUTES

28 U.S.C. § 1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## MISC:

Fed.R.Civ.P.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Civ.P.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Civ.P.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed.R.CivP. 23(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION AND SUMMARY OF REPLY

Plaintiffs have moved to transfer this case back to the Northern District of Florida ("NDFL") where it was originally filed because the transfer to this District does not meet 28 U.S.C. § 1404(a)'s criteria.  Plaintiffs could not have filed this case initially in the District of Columbia because no competent attorney would file it here.  To do so would subject plaintiffs' major claims to dismissal and their attorney to malpractice or violations of Fed.R.Civ.P.11 ("Rule 11").  The interests of justice and the reasons underlying the Rule 11 and malpractice issues show that the interests of justice were not served by the original transfer because of the unique status of the law in this District.

Defendants' Opposition (the "Opp.") provides a simple, compelling argument at first blush.  However, analysis shows that their arguments have no validity and depend upon the Court's closing its eyes to the realities of the American judicial and legal systems, the Constitution, and the unique nature of this case.  Defendants' main argument, the law of the case should apply to this motion and these plaintiffs, Opp. at 1-10, is a conclusion that rests on four false premises.  The first premise is the law of the case mandates that a court close its eyes to the transferring court's failure to meet statutory criteria of a § 1404(a) transfer.  Opp. at 2-3.  The second premise is the transfer is "correct and in the interests of justice", Opp. at 3-5.  This premise ignores the restrictions placed upon any litigator and litigant through the operation of the Federal Rules of Civil Procedure and local bar rules when measured against the unique characteristics of this case.

Defendants' third premise, that no manifest injustice will occur as a result of the transfer, Opp. at 6-10, rests on two false arguments.  First, closing their eyes to the points raised in

1

plaintiffs' argument concerning the limitations placed on attorneys by Rule 11 and the District of Columbia Rules of Professional Conduct, defendants argue plaintiffs could have brought this case in this District. Opp. at 6-8. Their second sub-argument is that § 1404(a) has different standards for diversity and federal questions in federal court, when defining the interests of justice and "where the case might have been brought." Opp. at 8-10.

Defendants' fourth premise is that no constitutional issues arise from denying plaintiffs' ability to litigate constitutional claims which are viable in every district except the District of Columbia. Opp. at 10. Given the magnitude and scope of defendants' alleged constitutional violations, this assertion is hardly surprising.

Before addressing these issues, it is important to identify what defendants did not discuss and two consistent themes that run throughout their argument designed to mislead the Court as to the applicable legal issues. First, defendants never address the mandatory requirements and limitations of Rule 11 and the District of Columbia's Rules of Professional Conduct on the attorney who would have to bring this case in this District. They never address the sanctions or malpractice that follows from the failure to follow those rules. Defendants' argue by their silence these considerations can be ignored when it is to the government's advantage to do so, regardless of the impact on counsel or the underlying rights of the litigants these rules recognize and were designed to protect, and the precedent concerning these issues, or the integrity of the Federal Rules and bar codes. This will be addressed in detail in Section III. A. below.

Second, defendants fail to address any case in which a federal court found that the local bar rules were inapplicable, Rule 11's requirements could be disregarded in filing a case, or the federal nature of a case provided an attorney a defense against malpractice. That is certainly not

2

the case law in this Circuit.  Circuit precedent and the D.C. Bar require attorneys comply with

Rule 11 and the Rules of Professional Conduct.

Defendants consistently mischaracterize these plaintiffs as the same plaintiffs in *Adair*.

Defendants cite cases concerning duplicative litigation in which the parties were identical and

attempt to frame this case in the same manner.  *See* Opp. at 3-4 and II. below.  Defendants

opposed allowing 23 of these plaintiffs to join *Adair*, and the Court agreed with defendants.

Defendants cannot now say these are the same plaintiffs as in *Adair*.  Defendants also argue that

the "putative class" is the same.  That is a figment of their imagination.  A putative class is not a

class and the *Adair* Court *never defined* a class so there was no class.

Defendants also falsely suggest these plaintiffs have litigated their claims which are

barred in this Court, but *these plaintiffs have never been before a court* to litigate these claims.  It

is absurd to argue (1) plaintiffs have litigated these claims or (2) these claims, viable elsewhere,

will get a fair hearing in this District where these claims will not be addressed because they are

barred or dismissed.

## ARGUMENT

### I.    THE LAW OF THE CASE CANNOT APPLY WHEN A § 1404(a) TRANSFER FAILS TO MEET STATUTORY CRITERIA

Defendants' first argue the Court should adopt the transfer as the law of the case, Opp. at

2-3,  regardless of whether it meets § 1404(a)'s criteria.  Defendants have not completely read or

understood the very cases they cite.  For example, they quote the observation in *Christianson v.*

*Colt Industries Operating Corp*., 486 U.S. 800, 817 (1988 ), that "[a] court has the power to

revisit prior decisions of its own or of a coordinate court in any circumstances, although as a rule

courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was *'clearly erroneous and would work a manifest injustice*.'" Opp. at 2 (quoting *Christianson*) (emphasis added by defendants). Defendants forget that "clearly erroneous" is defined as a decision contrary to the statute's words or purpose or the application of the wrong legal standard. *See Pigford v. Johanns*, 416 F.3d 12, 23 (D.C. Cir. 2005) (abuse of discretion includes applying "the wrong legal standard."), *cert denied*, 126 S.Ct. 1581 (2006). Defendants also ignore the fact that *Van Dusen v. Barrack*, 376 U.S. 612, 630 (1964), held that allowing a transfer motion to become in reality a motion to dismiss is contrary to the interest of justice, which is exactly the case here. The fact the Supreme Court reversed the transfer decision in *Van Dusen* indicates that such a situation clearly reached the level of being "a manifest injustice."

Defendants also ignore the fact a court's power to transfer a case under § 1404(a) depends on the case meeting § 1404(a)'s criteria. If this is the unique case which could not be brought in the District of Columbia as argued by plaintiffs, the NDFL had no power to transfer it here.

*Christianson* is not a case involving a § 1404 transfer. The question in *Christianson* was whether the defendant's appeal of an adverse liability decision in an antitrust case in which the defendant raised a patent-law issue as a defense should be addressed by the Seventh Circuit or the Federal Circuit which originally transferred the case to the Seventh Circuit. *Christanson* does have two points applicable to this case. First is its holding that jurisdiction is based on claims, not theories. 486 U.S. at 811 ("The well-pleaded complaint rule, however, focuses on claims, not theories...."). This is important because the difference of the viability of plaintiffs' claims in the different circuits directly affects where the case could be brought.

The second point is *Christianson* held that if the statute does not provide jurisdiction, a

court cannot assume it in the interests of justice. *Id.* at 818. While criticizing the Seventh Circuit for not accepting the Federal Circuit's decision it did not have jurisdiction but the Seventh Circuit did, *Christianson* noted with approval the Federal Circuit's review of the Seventh Circuit's decision which transferred the case back to the Federal Circuit. *Id.* at 817 ("Thus, even if the Seventh Circuit's decision was the law of the case, the Federal Circuit did not exceed its power in revisiting the jurisdictional issue"). The Court found fault with the Federal Circuit deciding the case "in the interest of justice" despite its finding it had no jurisdiction. *Id.* at 817-18. A transferee court has jurisdiction *only* if the transfer meets § 1404(a)'s criteria and this case does not, as shown below and in the Motion to Transfer.

## II.    *GIBSON* AND *ADAIR* ARE NOT THE SAME PARTIES

Defendants' main argument, that the NDFL transfer was "entirely correct and in the interests of justice," Opp. at 3-5, depends largely on its false portrayal of *Adair* and *Gibson* as consisting of or being the same parties. Opp. at 3 ("two different courts should not decide the same claims between the *same parties*") (emphasis added). Defendants cite cases in which one of the parties to a dispute filed duplicative litigation in another court. *Merrill Lynch v. Haydu*, 675 F.2d 1169 (11th Cir. 1982), Opp. at 3 and 4, involved the exact same parties in an alleged financial advisor mismanagement case which began in state court, was removed to federal court only to be remanded back to the state court. *Id.* at 1171 (case's procedural history). Defendant Merrill Lynch unsuccessfully tried to enforce an arbitration clause in the agreement at issue. Having failed in the state court, Merrill Lynch filed an action in federal court to enforce the United States Arbitration Act. *Id.* The issues and proceedings are not important except that the same parties were involved in every action cited in *Merrill Lynch's* litigation history and the

5

Eleventh Circuit properly concluded that comity required the state court to decide those issues since it first acquired jurisdiction and could address both state and federal questions. *Id.* at 1174. Other cases which defendants cite, *e.g., Oliney v. Gardner*, 771 F.2d 856 (5th Cir. 1985); and *Allstate Insurance v. Clohessy*, 9 F.Supp.2d 1314 (N.D.Fla. 1998), *see* Opp. at 4, all involve the same parties with identical issues.

   *TPM Holdings v. Intra-Gold Industries*, 91 F.3d 1 (1st Cir. 1996), which defendants cite at Opp. 4, involved the same parties but its facts and holding are contrary to their argument. In *TPM,* the parties first began litigation in Texas over property in New Hampshire and an adverse decision against Intra-Gold was pending appeal in the Fifth Circuit when the First Circuit made its ruling. Shortly after litigation began in Texas, Intra-Gold had placed "a notice of *lis pendens* on the deed for the New Hampshire property" in New Hampshire. *Id.* at 3. TPM then filed an action in New Hampshire alleging Intra-Gold had not met the statutory requirements for *lis pendens*. The district court agreed and Intra-Gold appealed, arguing "that the district court should have declined to hear TPM's action to remove the *lis pendens,*" since "similar issues were then before the Texas district court." *Id.* at 3. The First Circuit refused to reverse the district court's dismissal of the *lis pendens* despite the earlier filed action and the similarity of the parties. It held that the first filed rule only applied where the "overlap between the two suits is nearly complete." *Id.* at 4. But when "the overlap between two suits is less than complete," courts were to evaluate each case on its merits and determine whether the first filed rule was appropriate. *Id.* The *lis pendens* action was not addressed by the Texas court. *Id.* Here the overlap is also less than complete. Because of the case law dismissing or barring some of *Adair*'s major claims, *Adair* is not the same case as *Gibson, i.e.*, the overlap is not complete.

6

Defendants next argue "judicial economy" by itself is equivalent to "the interests of justice." Opp at 4. This argument is wrong for two reasons. First, this Circuit's law is that judicial economy can be insufficient on its own. *In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983) (per curium). *Warrick v. General Electric Co.; RCA Corp.*, 70 F.3d 736, 740 (2d Cir. 1995), illustrates the point while highlighting the contravening concern courts show over the right of litigants to bring their claims. Warrick, "individually and as a representative of a putative class," alleged the merger of General Electric (GE) and RCA violated the Employee Retirement Income Security Act of 1974. *Id*. at 737. The Connecticut District Court granted the defendants' § 1404(a) transfer motion on the basis of "judicial economy", *id.* at 738, because the Middle District of Pennsylvania had previously dismissed an action by individuals seeking essentially identical relief "as a result of GE's merger of the RCA plan into the GE plan and the Third Circuit affirmed the Middle District's dismissal for failure of the complaint to state a claim." *Id.* at 737-38. Accepting the *Warrick* plaintiff's mandamus petition, the Second Circuit found the transfer did not meet the interests of justice. The transfer did not "enable the respondents to defend in the same forum against all actions arising from the same transaction." *Id.* at 740 [citation omitted]. The Second Circuit found that the transfer "effected a short-circuit that would bring about dismissal of a claim without consideration by anyone." *Id.* In other words, the plaintiff's right to bring an action and having it heard and decided was more important to the interests of justice than mere "judicial economy." That is precisely the case here.

Defendants' sole purpose for transferring this case is to dismiss these plaintiffs' major claims "without consideration by anyone," converting the transfer motion to a motion to dismiss. This was a result *Van Dusen* specifically found to be contrary to the purpose of the statute in the

interests of justice. 376 U.S. at 625, 630 ("defendant's motion to transfer is tantamount to a motion to dismiss"). The defendants' concern over judicial economy is of recent vintage. The first two chaplain cases arose in the Southern District of California, *Wilkins v. United States*, 99cv1579, filed in July 1999, and *Sturm v. Danzig*, filed in October 1999. Defendants made no move to consolidate or transfer these cases despite their similarity in claims, nor did they seek to transfer *Adair* or the *Chaplaincy of Full Gospel Churches* cases to California, the first filed actions.

A consistent thread throughout defendants' opposition is their attempt to make these plaintiffs and the *Adair* plaintiffs the same parties. Defendants incorrectly and falsely described the different groups as "overlapping putative class actions", Opp. at 4, as well as the "same parties", *id* at 3, 7. Defendants' citation to *Newburgh on Class Actions* is misleading and inappropriate: "If a plaintiff has filed a class suit in which the putative class sought may be part of an already existing class in another district, the court, after determining that a conflict actually exists, may transfer the case for consolidation ...." id. (citing *Newburgh*, § 7.31, p. 89 (4th Ed. 2002)). There has never been "an already existing class in another district" because *Adair* was never certified as a class action. The *Adair* Court never defined the class or approved class counsel, two necessary requirements for class certification under Fed.R.CivP. 23(c). Before defendants requested transfer and the NDFL issued its transfer order, the *Adair* Court had vacated its order approving the *Adair* plaintiffs' motion for class certification. Consequently, there could be no conflict between competing classes because there were no competing classes.

Defendants' citation to the NDFL's transfer order, Opp at 5, makes the plaintiffs' point concerning that court's failure to consider the malpractice problems that would arise if this case

8

were brought in the District of Columbia.  In opposing defendants' Motion to File a Reply to their transfer motion, plaintiffs specifically raised the fact that no competent attorney would bring this case in the District of Columbia because doing so would subject him to malpractice, given the plaintiffs' major claims had been dismissed in *Adair* or were barred by *In re England*, 375 F.3d 1169 (D.C. Cir 2004), *cert denied*, 543 U.S. 1152 (2205).  The NDFL never considered how plaintiffs could bring their claims in the District of Columbia if no attorney would do so.  Whether those considerations of Rule 11, the Rules of Professional Conduct, and the District of Columbia's malpractice precedent would preclude bringing this case initially in this district is an issue that only this Court or this Circuit can address with authority.  As discussed below and in the plaintiffs' Motion to Transfer back to the NDFL, the decisions and binding precedent in this District and its bar's Rules of Professional Conduct preclude filing this case in this District because of this case's unique characteristics.

Defendants' citation to the NDFL decision includes footnote 5 in which that court criticized plaintiffs' forum shopping.  Although that question is not relative to this issue, defendants' attempt to indirectly cast aspersions on plaintiffs' conduct deserves some attention.  As explained in the Motion to Transfer at 9-16, the District of Columbia Rules of Professional Conduct *require* an attorney to examine the law and to determine the best legal means to accomplish the client's litigation objectives.  *See In re Lenoir*, 585 A.2d 771, 775, 782 (D.C. App. 1991) (attorneys sanctioned for failure to act zealously in pursuit of client's objectives).  Here, because plaintiffs come from many different jurisdictions, an attorney *must* determine whether their claims are better pursued in their local jurisdictions as opposed to some other jurisdiction where service on the defendants can be obtained.

9

The Fifth Circuit has addressed the specific issue of "forum shopping", which in this case

must be multiplied by a factor of 42, the number of plaintiffs.

> Forum-shopping is sanctioned by our judicial system. It is as American as the
> Constitution, peremptory challenges to jurors, and our dual system of state and
> federal courts. The extension in Article III of federal judicial power to
> "controversies between citizens of different states," implemented by statute
> continuously since 1789, [28 U.S.C. § 1332]  permits a plaintiff who might sue in
> a state court to select a federal forum for the claim. The statutory provision for
> removal to federal courts of such diversity cases filed in state court permits the
> defendant to opt for a federal forum.  Virtually all causes of action created by
> federal law may be asserted in either a state or a federal court.   Many claims that
> may be asserted in the courts of one state may also be asserted in the courts of
> another. Not only may a litigant frequently select among several jurisdictions, he
> may, within a jurisdiction, lay venue in more than one court
>
> The existence of these choices not only permits but indeed invites counsel in an
> adversary system, seeking to serve his client's interests, to select the forum that he
> considers most receptive to his cause. The motive of the suitor in making this
> choice is ordinarily of no moment: a court may be selected because its docket
> moves rapidly, its discovery procedures are liberal, its jurors are generous, the
> rules of law applied are more favorable, or the judge who presides in that forum is
> thought more likely to rule in the litigant's favor.

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983).

> In reality, every litigant who files a lawsuit engages in forum shopping when he
> chooses a place to file suit. The Court is concerned only with whether the choice
> of forum is a proper one under the law, and not with the motives of the party
> selecting the forum. The venue statutes are intentionally broad, and litigants must
> often make an election from among several options as to where to file a lawsuit.

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994, 996 (E.D.Tex. 1993).

## III.    NOT BEING ABLE TO LITIGATE CLAIMS WHICH ARE VIABLE AND OTHER DISTRICTS IS MANIFEST INJUSTICE

Defendants' argument that plaintiffs will not suffer a manifest injustice by being required

to litigate their claims in this Court, Opp. at 6-10, rests on two false assumptions, both of which

require the Court to close its eyes to existing precedent and the legal realities of bringing a case.

10

Completely ignoring plaintiffs' Rule 11 arguments, the D.C. Rules of Professional Conduct, and malpractice liability issues, *see* Transfer Motion at 9-18, defendants first claim this District is a forum where plaintiffs could have brought their claims. Opp. at 6-8. Defendants then argue the interests of justice and the definition of "where a case might be brought" are different depending on whether the case involves diversity or federal question jurisdiction. Opp. at 8-10. Both of these arguments fail.

### A.     Defendants' Argument Ignores the Reality That Any Attorney Bringing this Case must Comply with Rule 11 and an Attorney Must Act in Accord with the District of Columbia's Rules of Professional Conduct

As noted above, defendants completely ignore plaintiffs' major contention, that no competent attorney would bring this case in the District of Columbia, regardless of how good his malpractice insurance was. *See* Transfer Motion at 9-18. Their silence is deafening but not surprising because they have no answer. By their silence, they argue that an attorney may and should disregard his responsibilities to obey the rules of the profession and the Federal rules. To argue this openly would, in fact, subject to them to discipline by the D.C. bar. Plaintiffs ask the Court to construe defendants' silence on this issue as an admission they have no answer. In the alternative, defendants' silence argues that under § 1404(a), a defendant can cause a plaintiff to bring a suit where no one else would bring it, making § 1404(a) in effect a federal proscription of existing bar rules and codes or rules of professional conduct. There is no support for such a far reaching breach of American judicial practice, procedure and precedent.

Under defendants' view of "where [the case] might have been brought," all that is needed is venue, and jurisdiction over the person and subject matter. Opp. at 6-7. This hardly describes

the legal reality of bringing a case and would redefine what that term means, legally and factually.  These are necessary conditions, but not all of the factors an attorney must consider and the law requires before a suit can be brought.

### 1.    Defendants ignore the fact "to bring a case" means filing a complaint

*Harris v. Garner*, 216 F.3d 970, 973-74 (11th Cir. 2000), *cert denied,* 532 U.S. 1065 (2001), addressed the question of what "bringing a suit" means and showed the term has a well settled meaning, specifically related to filing a complaint through the application of the Federal Rules.

> The standard legal dictionary answers that question as follows: "To 'bring' an action or suit has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit." Black's Law Dictionary 192 (6th ed.1990); *accord* 5 Words and Phrases, "Begun" (1968) (defining "begun" or "brought" to mean "commenced"). That is the generally accepted meaning of the term, and this is not the first time we have had occasion to say so.
>
> ***.
>
> The Supreme Court has reached an identical conclusion about the meaning of "bring" and "brought." *Hoffman v. Blaski,* 363 U.S. 335, 341 (1960), involved 28 U.S.C. § 1404(a), the venue provision which permits the transfer of "any civil action to any other district or division where it might have been brought." The argument was made that because the statute is remedial, the words " 'where it might have been brought' should be held to relate not only to the time of the bringing of the action, but also to the time of the transfer." *See id.* at 342. The Supreme Court rejected that position, in large part because the statutory language was "unambiguous, direct [and] clear," *id.* at 343, and interpreting "might have been brought" to refer to anything other than the time the lawsuit was filed would "do violence to the plain words" of the statute. *Id.* at 344.  The same is true here. This is not new ground. The Supreme Court first broke it one hundred and seventeen years ago, when it had occasion to apply a legislative requirement that a lawsuit be "brought within 90 days after the decision" of a government official. The Court said this: "A suit is brought when in law it is commenced, and we see no significance in the fact that in the legislation of congress on the subject of limitations the word 'commenced' is sometimes used, and at other times the word 'brought.' In this connection the two words evidently mean the same thing, and are used interchangeably. *Goldenberg v. Murphy,* 108 U.S. 162, 163 (1883). The

same is true here: "brought" means "commenced."

"A civil action is commenced by filing a complaint with the court. " Fed.R.Civ. P. 3.  In every day terms "bringing a case" is the process of filing a complaint and to do so, a party must comply with the Fed.R.C.P., including Rule 11.  Fed.R.Civ. P. 1 ("These rules govern the procedure in the United States District Courts and all suits of a civil nature").  That, in and of itself, enlarges the definition and legal consequences of where the case might have been brought, a fact defendants completely ignore.

### 2.    Defendants ignore the fact an attorney must comply with Rule 11 and local bar requirements to file a complaint

"Bringing the case" in accord with § 1404(a)'s criteria is a process with several inter-related and critical parts that lead to filing a complaint, all of which are necessary to properly bring the case.  Without each part being present and accomplished according to law, including the applicable Federal and local rules, and the bar's rules, the complaint cannot be filed.   Parts of this process are mandated by Rule 11 and may not be ignored, requirements which find their parallel mandatory components in the D.C. Rules of Professional Conduct.  *See* Transfer Motion at 11-18.  This initially includes: (1) identifying the facts and the specific causes of action which the facts support; (2) the applicable statutory and constitutional considerations; (3) examination of the local law and precedent addressing each cause of action, *see* D.C. Rules of Professional Conduct 1.1; (4) venue considerations such as location of plaintiffs and defendants; and (5) special statutory venue considerations.  Transfer Motion at 11-16.

In determining the proper venue, the attorney has a duty to address local binding

13

precedent. While sometimes referred to as "forum shopping", *see* discussion in II above, the attorney who neglects this aspect of the process subjects himself to possible sanctions and malpractice. The examples of *Hoffman v. Blaski*, 363 U.S. 335 (1960), and *Van Dusen v. Barrett,* 376 U.S. 612 (1964), provide illustrations of reasonable attorneys fulfilling their professional and legal duties. *Blaski's* attorneys could not file their case in Illinois because a review of the necessary prerequisites showed they did not have personal jurisdiction over the defendant there. 363 U.S. at 334. In *Van Dusen*, the attorneys of the Pennsylvania plaintiffs could not file their case in Massachusetts, the location of the accident, because the plaintiffs were not qualified to bring their action, 376 U.S. at 619, and doing so would prejudice their clients. Filing their clients' cases in Massachusetts would have subjected the plaintiffs' attorneys to malpractice. Although the Supreme Court did not address the legal implications of such egregious misconduct, it did not need to do so because every reasonably competent attorney understands that if you file your case in the wrong jurisdiction and your client loses the opportunity to make the claim, available in another jurisdiction, you have committed malpractice and are subject to liability.

In the District of Columbia, an attorney has an obligation to advise his clients of not only the basis for their claims but problems facing a successful litigation, including the precedent of the court in which the case would be filed. *See* Transfer Motion at 11-16. If this were a diversity case, there would be no question the plaintiffs had the right to choose their forum, a right recognized in all judicial forums. *See Van Dusen*, 376 U.S. at 633-34 (recognizing § 1404(a)'s purpose was not to defeat plaintiffs' choice of a favorable forum). The right to choose a forum is no less true in a federal question case when there are multiple plaintiffs residing in

14

multiple jurisdictions, as in this case.  What makes this case unique is bringing plaintiffs' claims

in the District of Columbia subjects some of them to dismissal because of the *unique* law of the

case and Circuit precedent, *see* Transfer Motion at 18-29, and subjects the attorney who would

bring this case to malpractice and sanctions under Rule 11 and the D.C. Rules of Professional

Conduct.  *Id.* at 9-18.  Defendants have failed to address any of these factors.

> **3.    Applying Rule 11 and Codes of Professional Conduct in determining**
> **whether a case could be brought in the transferee district would not**
> **lead to absurd results**

Defendants argue that plaintiffs' theory that Rule 11 and Professional Codes of

Conduct should be a determinative factor in deciding whether a case could be brought would

"lead to absurd results," Opp. at 7.  This is nonsense.  First, Rule 11 applies to every action in a

federal court and every court is bound to enforce its provisions and those of the local bar.

Second, defendants ignore the unique nature of this case; plaintiffs could find no other transfer

case where a plaintiff claimed its attorney could not bring suit in the transferee court because

doing so would violate Rule 11, the professional rules of conduct, and subject the attorney to

malpractice for violating those basic requirements which every attorney is expected to follow.

As plaintiffs pointed out in their Transfer Motion at 9-24, this case is unique.  Its very

uniqueness requires that it be considered on its unique nature.  Failure to do so results in

manifest injustice because it establishes separate standards for attorneys bringing civil actions

against non-government parties and parties who sue the government, and separate "interests of

justice" for federal question and diversity cases.  Defendants essentially argue they can move a

case against the government to any jurisdiction, regardless of whether the plaintiffs could have

brought a case there.

Defendants' argument that the "transferor Court ... would have to hold a 'mini-trial' to determine the relevant facts and apply them against the Circuit law in the transferee forum to determine whether plaintiffs could prevail in the transferee court," Opp. at 7, is likewise absurd and ignores the unique nature of this case.  Here we are not dealing with a single claim, but several major claims which are viable in every district except the transferee district.  It is not an imposition on the court's resources or its ability to reach a decision to determine whether bringing a claim in the transferee court would subject the attorney to Rule 11 violations, malpractice, or sanctions under the local rules.  The courts are not at liberty to ignore Rule 11 or binding regulations determining appropriate attorney conduct and defining attorney misconduct or malpractice.  *See Saltany v. Reagan,* 886 F.2d re8, 496 (D.C. Cir. 1989), *cert denied*, 4590.5.932 (1990) (sanctions required for Rule 11 violations). Courts normally evaluate the rules or law in other jurisdictions in diversity cases and defendants present no evidence why a properly raised objection, as in this case, should be disregarded and not evaluated, just as any other objection would be if this were a diversity case, *e.g.*, defendant is not subject to service of process.

### 4.    These plaintiffs have not brought their claims in this court through *Adair*

Defendants argue "*Gibson's* putative class *did* bring their claims in this Court by first filing in *Adair*."  Opp. at 2.  This is an exercise of willful blindness.  As noted above and in the Transfer Motion, *Adair* has never been certified as a class.  Twenty-three of these plaintiffs sought to join *Adair*, to which these defendants objected, and the Court agreed with defendants. The Associated Gospel Church ("AGC"), a plaintiff here, was certainly not in *Adair*, and specifically instructed counsel not to bring their cause of action in this Court because of its

unique law.  Dr. Baugham Declaration (Exhibit 3), ¶¶ 15-16.

Defendants' argument here depends upon the unsupportable fiction that *Adair* was a certified class action and AGC was a person instead of an organization; Opp. at 8 ("Under plaintiffs logic, members of a putative class action may abandon a court already considering their class action and file the same class action in other courts until the class find a court to its liking."). There is a difference between a putative and a certified class, between persons and organizations.  Personnel within the class can only become members of the class when a court finds that the requirements of Rule 23 have been met and certifies the class accordingly.  *Adair* was never certified as a class.

Defendants point to no authority which holds that potential plaintiffs must wait until a court transforms a putative class into a certified class before protecting their rights by seeking alternative forums to resolve their claims.  In fact, in class litigation plaintiffs who have filed other suits are given the option of maintaining their separate litigation and in many cases, plaintiffs are given the opportunity to opt out of the class and pursue their own claims in alternative jurisdictions and venues.  *See* Rule 23(a)(1)(C).  Rule 23(c) envisions a class certification decision being made "at an early practicable time" in the litigation so the rights of all the parties can be established and the contours of the claims and the litigation be developed accordingly.  The record is clear in *Adair* that no class certification was ever granted before *Gibson* was filed and the *Adair* Court vacated the order granting those plaintiffs' motion to certify a class, a request which had never been completed.  Defendants here seek to establish new procedures to limit the ability of potential class plaintiffs to vindicate their claims because a similar case is pending in some other court, regardless of the fact the class has not been certified

17

and the plaintiffs may face losing their ability to bring their claims because of statute of

limitations issues.

**B.    Due Process Requires that the Principles Evaluating § 1404(a)'s Criteria Be the Same for Litigants in Both Federal Question and Diversity Cases**

Defendants' final part of their third argument is the principles and rules applied to §

1404(a) transfers developed in diversity cases do not apply to federal question cases.  Opp. at 8-

10.  Defendants correctly point out that *Van Dusen* held "a § 1404 transfer will not affect

substantive law, but is intended 'simply to authorize a change of courtrooms.'"  Opp. at 8 (citing

*Van Dusen*, 376 U.S. at 637).  *Van Dusen* held it was against the interests of justice for a

defendant to get a substantive change of law, a legal windfall so to speak, as a result of a §

1404(a) transfer.  "The legislative history of § 1404(a) certainly does not justify the rather

startling conclusion that one might 'get a change of law as a bonus for a change of venue.'"  *Id.*

at 636.  This holding was in response to the *Van Dusen* plaintiffs concerns addressing "the

difficulties that would arise if a change of venue, granted at the motion of a defendant, were to

result in a change of law."  *Id.* at 629 [citations omitted].  The Court noted: "[t]he decisions of

the lower federal courts, taken as a whole, reveal that courts construing § 1404(a) have been

strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a

prejudicial change in applicable state laws."  *Id.* at 630.  The Court found the principles in these

cases "faithfully reflect the purposes underlying § 1404(a)."  *Id.* at 631.  Defendants would have

the statute achieve different objectives in a federal question case and allow the prejudice

forbidden in a diversity case to be visited upon plaintiffs in a federal question case, a startling

concept of justice or equal justice.  Section 1404(a) has no language or legislative history

18

showing Congress intended the statute to apply differently in federal question cases than it does in diversity cases.

The defendants' citation to the Court's comments in *Ferens v. John Deere Co.* suggesting that prejudice was not important, Opp. at 8, ("the decision to transfer venue under § 1404(a) should turn on considerations of convenience and the interests of justice rather than the possible prejudice resulting from a change of law.") (quoting *Ferens*, 494 U.S. at 523), is taken out of context and, as interpreted by defendants, is clearly in contradiction to the other holdings and results of the Supreme Court's decisions on § 1404(a) transfers. As noted above, *Van Dusen* rejected the idea that a transfer should give the defendant a bonus as a result of a transfer which the defendant initiated. That is why *Van Dusen* and subsequent decisions emphasize the rule that "a transferee forum [] apply the law of the transferor court, regardless of who initiates the transfer." *Ferens*, 494 U.S. at 523. This leaves the plaintiff who initiated the action in control of the substantive law upholding his right to bring claims to vindicate this legal rights. "[I]f the applicable law were to change after transfer, the plaintiff's venue privilege and resulting state law advantages could be defeated at the defendant's option." *Id.* at 524 (citing *Van Dusen*, 376 U.S. at 638). This would be against the interests of justice.

If § 1404(a)'s purpose is "simply to authorize a change of courtrooms," *Van Dusen*, 376 U.S. at 637, then a plaintiff can be in no better or worse situation in the transferee court than he could be in the venue he originally selected. That is possible through the application of Rule 11 and the other considerations of the rules of professional conduct, *e.g.*, D.C. Rules of Professional Conduct, because if the case could not be brought due to the disciplinary sanctions for violating those rules or the threat of malpractice, the transfer would be limited to only those

19

places where a complaint could be legally and properly filed. This addresses the unique situation of this case where transfer to any other district court except the District of Columbia would not have prejudiced plaintiffs, *e.g.*, the Southern District of California. As plaintiffs argue in their Motion to Transfer, subjecting plaintiffs and defendants to two different standards and rules in federal questions than parties in diversity cases, raises substantive procedural and Due Process issues. Furthermore, such a result is clearly inconsistent with both the legislative purpose and the statute's interpretation by the Supreme Court in *Blaski*, *Van Dusen* and subsequent decisions. "The *Van Dusen* policy against forum shopping simply requires us to interpret § 1404(a) in a way that does not create an opportunity for obtaining a more favorable law by selecting a forum through a transfer of venue. In the *Van Dusen* case itself, this meant we could not allow defendants to use a transfer to change the law." *Ferens,* 494 U.S. at 527 (citing *Van Dusen*, 376 U.S. 636). That is defendants' objective here.

Defendants' mischaracterization of *Ferens*, Opp. at 8 and above, leads them to acknowledge that "the basic principle [*i.e.*, ignoring prejudice to plaintiffs] yields a different result when a federal law claim is being transferred." Opp. at 8. They ignore the fact the result is prejudice to the plaintiffs, a result forbidden by *Van Dusen* and *Ferens*. The justification for their claim is "the transferee court should be free to decide a federal claim in a manner it views as correct" based on its own law. *Id.* at 8-9 (citing *In Airline Disaster*, 829 F.2d 1171, 1174 (D.C. Cir. 1987)). This is precisely why this transfer is more than just a change of courtrooms and produces a result contrary to § 1404(a)'s purposes and provisions as determined by the Supreme Court. The *Korean Airlines* case involved two different circuits' application of law which resulted in different amounts of or limitations on recovery. That was not a case where the

20

plaintiff went from a jurisdiction that allowed a remedy to a jurisdiction that barred the claim. That is this case. Many of plaintiffs' substantive claims are barred in this Circuit but viable elsewhere.

Defendants also misstate plaintiffs' argument. Defendants allege plaintiffs argue that they "deserve to win on their Establishment Clause claims and any rule that interferes with such an outcome should be disregarded." Opp. at 9. This is not plaintiffs' argument. Plaintiffs claim they should be able to litigate their First Amendment claims, something they cannot do on their major claims in this District. For example, they believe the Supreme Court precedent requires a court to examine denominational preferences under strict scrutiny and if that happens, they will win because defendants cannot meet that criteria. *See, e.g.*, *Hernandez v. C.I.R.*, 490 U.S. 680 (1989) ("*Larsen [v. Valente*, 456 U.S. 228, 245 (1982)] teaches that, when it is claimed that denominational preferences exist, the initial inquiry is whether the [practice] facially differentiates between religions."); *County of Allegheny v. ACLU*, 492 U.S. 573, 608-09 (1989) (strict scrutiny required for practices suggesting a denominational preference). *Adair* held it would apply strict scrutiny to any practice which suggested a denominational preference, *Adair v. England*, 217 F.Supp.2d 7, 14, 15, (D.D.C. 2002). But when confronted with a 26-year denominational preference, *Adair v. England*, 417 F.Supp.2d 1, 4 (D.D.C. 2006), the *Adair* Court denied strict scrutiny and the claim. *Id.* at 6. Plaintiffs can find no other district which would not apply strict scrutiny to a denominational preference.

## IV.  DEFENDANTS FAIL TO ADDRESS THE CONSTITUTIONAL ISSUES ARISING FROM THE TRANSFER WHICH BARS PLAINTIFFS' CONSTITUTIONAL CLAIMS

Defendants' response to plaintiffs' allegations that "transfer to this district violates plaintiffs right to petition for redress of constitutional violations," *see* Transfer Motion at 43-45, mischaracterizes the issue and ignores the facts. Defendants suggest that plaintiffs believe the Constitution guarantees them a victory by alleging a constitutional violation. Opp. at 10. That is not plaintiffs' argument. Defendants acknowledge the very point the plaintiffs make, the Constitution "assures citizens of 'a reasonably adequate opportunity to present claims and have them decided on the merits.'" Opp. at 10 (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). While acknowledging "[that] opportunity is all the constitution [sic] requires", *id.*, that is exactly what the transfer here denies. As shown above, these plaintiffs have not had the opportunity to litigate the constitutional claims that are barred in *Adair*. Defendants fail to explain how the Associated Gospel Churches has had an opportunity to litigate the constitutional claims in *Gibson*. Likewise, the other plaintiffs have had no opportunity. The record shows the *Adair* Court's decision that chaplains serve on promotion boards as naval officers, *Adair v. England*, 183 F.Supp.2d 31, 62 (D.D.C. 2002), was made on a motion to dismiss. That decision is one of the reasons why *Gibson* plaintiffs instructed their counsel not to bring this case in the District of Columbia. That decision in *Adair* may eventually be reversed or overturned, either through reconsideration or appeal, but it is the law of the case in *Adair*. These plaintiffs find it inconsistent with Department of Defense instructions defining endorsement and chaplains, and contradicted by statistical analysis and their practical experience[1], and are entitled to litigate it because the introduction of denominational criteria on

---

[1]  *See, e.g.*, Declarations of LCDR Gary Stewart, Exhibit 2, Klon Kitchen (Exhibit 7), and CAPT Floyd Ellison, Exhibit 8 (all alleging denominational preferences on chaplain promotion boards).

promotion boards violates the Establishment Clause, producing irreparable harm. The transfer

of this case allows defendants to effect a "short-circuit that would bring about dismissal of a

[plaintiff's] claim without consideration by anyone." *Warrick*, 70 F.3d at 740. This is contrary

to § 1404(a)'s purpose.

## CONCLUSION

As plaintiffs show in their Motion to Transfer, this case is unique and its uniqueness

prevents it from being brought initially in this District. Defendants have not shown that transfer

is in the interests of justice or that any attorney would bring this case here. Instead, the unique

circumstances of this District's law would subject any attorney who brought this case to

sanctions under Rule 11 and the D.C. Rules of Professional Conduct, and subject the attorney to

malpractice. Consequently, this is not a case that could be brought in this District and the

transfer was improper because it did not meet § 1404(a)'s criteria. Accordingly, the case should

be transferred back to the Northern District of Florida.

Respectfully submitted,

April 5, 2007

      /S/ Arthur A. Schulcz ,Sr.

ARTHUR A. SCHULCZ, SR.

D.C. Bar No. 453402

2521 Drexel Street

Vienna, VA 22180

703-645-4010

FAX: 703-645-401

Of Counsel:

Douglas McKusick, Esq.

THE RUTHERFORD INSTITUTE

P.O. Box 7482

Charlottesville, VA 22906-7482

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 5, 2007, I electronically filed the foregoing Plaintiffs'

Reply Memorandum to Defendants' Opposition to Defendants' Motion to Transfer this Case to

the Northern District of Florida  with the Clerk of the Court to be served by the Court's

CM/ECF system on the following:

Daniel Bensing
Trial Attorney, Civil Division
U.S. Department of Justice
20 Massachusetts Ave., NW
 Room 6114
Washington, D.C. 20001


<u>/s / Arthur A. Schulcz, Sr.</u>
ARTHUR A. SCHULCZ, SR.
Counsel for *Gibson* Plaintiffs
D.C. Bar No. 453402
2521 Drexel Street
Vienna, VA 22180
703-645-4010

25